5297-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

HEAVY METAL CAPITAL PARTNERS, ) CASE NO.:
LLC, a Florida limited liability )
company; DAVID C. SMITH, an )
individual; and RICHARD H. )
SEGERSON, an individual, )
  )
        Plaintiffs, )
  )
v. )
  )
CARBONATIK, LLC, )
a Florida limited liability company, )
CARBONATIK GRAMINET, LLC, a )
Florida limited liability company, )
JOSEPH K. SWAMINATHAN a/k/a )
JOSEPH SWAMINATH, an individual, )
and BRENDAN FITZPATRICK, an )
individual, )
  )
        Defendants. )
  )

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, HEAVY METAL CAPITAL PARTNERS, LLC, a Florida limited

liability company; DAVID C. SMITH, an individual; and RICHARD H.

SEGERSON, an individual, hereby sue Defendants, CARBONATIK, LLC, a

Florida limited liability company; CARBONATIK GRAMINET, LLC, a Florida

limited liability company; JOSEPH K. SWAMINATHAN, also known as JOSEPH

SWAMINATH, an individual; and BRENDAN FITZPATRICK, an individual

(collectively, "Defendants"), and state and allege as follows:

- 1 -

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Heavy Metal Capital Partners, LLC ("Heavy Metal"), is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

2.      Plaintiff, David C. Smith ("Smith"), is a citizen of the State of Colorado and is otherwise *sui juris.*

3.      Plaintiff, Richard H. Segerson ("Segerson"), is a citizen of the State of Florida and is otherwise *sui juris.*

4.      Defendant, Carbonatik, LLC, is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

5.      Defendant, Carbonatik Graminet, LLC ("Carbonatik Graminet"), is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

6.      Carbonatik, LLC is Manager of Carbonatik Graminet.  Occasionally in this Complaint, Carbonatik, LLC and Carbonatik Graminet are referred to together as "Carbonatik."

7.      Defendant, Joseph K. Swaminathan, also known as Joseph Swaminath ("Swaminathan"), is a citizen of the State of Florida.  He is Chief Executive Officer of Carbonatik, LLC and a co-Manager (with Carbonatik, LLC) of Carbonatik Graminet.

8.      Defendant, Brendan Fitzpatrick ("Fitzpatrick"), is a citizen of the State of Florida and President of Carbonatik, LLC.

9.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

10.     This Court has supplemental jurisdiction over all related state-law claims under 28 U.S.C. § 1367.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside in this District, and the acts of which Plaintiffs complain occurred in this District.

## FACTS COMMON TO ALL COUNTS

12.     In January 2025, Defendants approached Heavy Metal and represented that they had "hundreds of millions of dollars" available to deploy into U.S. clean-energy and infrastructure projects.  As part of that solicitation, Defendants provided Heavy Metal with what they represented to be a legitimate letter of intent ("LOI") from a purported investment target.  Plaintiffs later learned that the LOI was fabricated, causing Heavy Metal significant professional embarrassment.  These misrepresentations continued into February 2025, when Defendants further claimed that Carbonatik had funded investor facilities and mining concessions capable of immediate production and long-term offtakes— claims that were later admitted being false.

13.     In February 2025, Defendants solicited Heavy Metal for a $500,000.00 investment in Carbonatik, ***promising a guaranteed 120% dividend beginning in July 2025 and continuing for 20 years thereafter.***    In so doing, Defendants represented, among other things, that Carbonatik had ***already funded*** investor facilities and mining concessions to

support ***immediate production*** and long-term offtakes.  As set forth below, those representations were plainly false and inconsistent with Defendants' later admissions that they still needed $1–2 million merely to fund "preparatory work" and "trial shipments" and had not yet secured the promised financing or production capability.

14.    On February 4, 2025, Carbonatik Graminet, as "Seller," and David Smith and Richard Segerson, as "Purchaser," entered into a Share Purchase Agreement for Purchaser's purchase of 1% of the shares of Carbonatik Graminet. On the same day, Swaminathan and Fitzpatrick issued a 0.5% Membership Certificate to David C. Smith and a 0.5% Membership Certificate to Richard Segerson, certifying that each was the owner of 0.5 percent of Carbonatik Graminet.  A true and correct copy of the fully executed Share Purchase Agreement, with Swaminathan signing on behalf of Carbonatik Graminet, is attached hereto as **Exhibit "A."**  True and correct copies of the referenced membership certificates are attached hereto as **Exhibit "B"** and **Exhibit "C,"** respectively.

15.    Between February 10, 2025, and March 6, 2025 (in less than a month's time), Heavy Metal wire transferred to Carbonatik ten separate wire transfers, totaling $500,000.00. The funds were transmitted in multiple increments of approximately $50,000.00 as shown in the transfer records attached hereto as **Composite Exhibit "D."**  On March 3, 2025, Fitzpatrick and Smith communicated, via text message, regarding the existence of the wire

transfers.  An excerpt of those extensive communications is attached hereto as **Composite Exhibit "E."**

16.     On March 7, 2025, Fitzpatrick texted Smith regarding supposedly owning the rights to conduct exploration and extraction of the Mannar Basin and that all that was needed was $500 million and a "53-101" (referring to a NI 43-101 report).  Referring to one of Smith's clients, Fitzpatrick stated: "Get us the specs so we can get **him [Heavy Metal's client]** the pricing and then he can send the ICPO [Irrevocable Corporate Purchase Order]."  (Emphasis added.)  In the same correspondence, Fitzpatrick also referenced a wholly separate graphite specifications relating to a different transaction, thus conflating the two suggested ventures.

17.     Although Fitzpatrick's March 7 text referenced providing "specs" so that one of Heavy Metal's clients could send an ICPO—language tied to graphite, not the Mannar Basin—Defendants simultaneously represented that they controlled the Mannar Basin and only needed funding to begin operations. ***These statements portrayed Carbonatik as already in control of significant exploration and extraction rights and in a position to transact immediately, which was inconsistent with Defendants' later inability to show any operations when Smith traveled to Africa (as explained below) and their subsequent failure to deliver even a single trial shipment.***

18.     Moreover, when Heavy Metal later identified a major prospective investor seeking additional information about the Mannar Basin, Fitzpatrick abruptly changed the terms and demanded $50 million merely for the investor

to review the seismic data, contradicting Defendants' earlier statements that Carbonatik already controlled the Basin and was seeking only a drilling partner. These shifting and inconsistent representations further illustrated that Defendants lacked any genuine rights or capability in the Mannar Basin and were misrepresenting both opportunities to induce Plaintiffs' continued involvement.

19.     On March 11 and March 13, 2025, Heavy Metal and Carbonatik executed a Broker Agreement, appointing Heavy Metal as a non-exclusive worldwide broker, with commissions and a two-year non-circumvention/confidentiality regime, governed by Florida law.  Carbonatik's published Rules of Engagement required formal onboarding (NDA/NCA), a Letter of Intent with specifications, proof of funds/financial commitment, and then FOB-based shipping.  A true and correct copy of the Broker Agreement is attached hereto as **Exhibit "F."** ***Consistent with Defendants' other representations, the Broker Agreement and Rules of Engagement were premised on the existence of real production capacity and the ability to ship copper and other commodities—all of which, as explained below, Carbonatik in fact lacked.***

20.     After the Broker Agreement was executed, Heavy Metal deployed more than 30 personnel throughout 2025 to market and sell copper and other commodities for Carbonatik.  During the same period, Carbonatik and its principals represented that production capacity and investor financing existed to support ***immediate deliveries*** and long-term offtakes, while Heavy Metal

- 6 -

advanced or obtained commitments for the tender of substantial funds exceeding 55,000 metric tons of copper delivered monthly for the program for multi-year contracts with a value exceeding $6 billion per year for a minimum of three years. ***In reality (and as Defendants later admitted), Carbonatik had not secured the promised investor financing, still required a $1–2 million infusion merely to conduct "trial shipments," and never delivered any copper, rendering these prior representations materially false and inconsistent with Carbonatik's actual capabilities.***

21.   On March 17, 2025, Fitzpatrick texted Smith, indicating that he would "sell one more point of graminet if you know anyone.  I have one reserved for My Wife [sic] But she is fine anyway lol."  Fitzpatrick and his spouse are a "celebrity couple" who are claimed to have great wealth and whose "lavish wedding" in 2022 was published in People Magazine.  A true and correct copy of the March 17 text message is attached hereto as **Exhibit "G."**  ***Defendants used this image of wealth and social prominence to reassure Heavy Metal about Carbonatik's stability and creditworthiness, which was inconsistent with their subsequent admissions that they lacked even modest working capital and needed new funds to perform basic preparatory work.***

22.   On March 20, 2025, Fitzpatrick texted Smith, stating:

> So I just got confirmation that we will have the 43101 on April 15 it's longer than expected but it's a drop dead date and could potentially have 1 week earlier.  So we're golden. . . . We ***own*** the mannar oil basin[.]  We ***own*** 30 million tonnes of graphite reserves[.]  We ***own*** 20 million tonnes of copper ore reserves[.]  It didn't happen overnight !  Now we are ready to ***fucking*** deliver. It was all built for 2025.  That's without getting into lithium

> owned or other rare earth owned etc.  You have no ***fucking*** idea !  You're [sic] knowledge of what we have is just scratching the surface lol."  To induce an investment, Fitzpatrick then coached Smith to "[j]ust have him [Heavy Metal's client] put a UCC on our above ground graphite and copper[.]  Combined it's worth more than 13.5m[.]  We have 2000 tonnes of graphite stored and 5000 of copper ore[.]

A true and correct copy of the March 20 text message is attached hereto as **Exhibit "H."**  ***These sweeping assertions of ownership of the Mannar Basin, tens of millions of tons of reserves, and thousands of tons of above-ground inventory, coupled with a "drop dead" promise of a 43-101 by April 15 and the assurance "we're golden" and "ready to . . . deliver," were materially inconsistent with Defendants' subsequent inability to deliver any metals, obtain the promised $250 million line of credit, or even fund a small "trial shipment" without fresh investor money.***

23.    Throughout March 2025, Fitzpatrick repeatedly told Smith that multiple sovereign-wealth funds and Middle Eastern banks were "lined up" and "fighting over" the opportunity to lend Carbonatik money at 3% APR, secured by the anticipated NI 43-101 report.  Fitzpatrick assured Plaintiffs that these lenders were prepared to immediately fund Carbonatik's operations and that the NI 43-101 would be issued by April 15, 2025.  Defendants knew that these statements were false.  As Defendants later admitted, no such financing existed; no lenders had committed to any facility; and Carbonatik lacked even minimal working capital.

24.    On April 11, 2025, Fitzpatrick wrote to Smith: "I had call with Sharjah bank this morning and our guys in Dubai.  They want us to open an

- 8 -

account with the 43-101 when we have it and will issue us a 250m line of credit immediately. So that's going to get a lot moving." After this correspondence, however, **nothing "moved"**: Heavy Metal received no copper or other metals ordered. A true and correct copy of the April 11 text message is attached hereto as **Exhibit "I."**

25. Moreover, Defendants promised that Heavy Metal would receive a return of its investment, plus a dividend to Smith and Segerson by July 4, 2025. Indeed, on June 6, 2025, Smith and Swaminathan engaged in the following text message exchange:

> **Smith (6/6/25, 6:59 AM):** That situation was not created by me . I was told a lot of things that aren't true . Rich and I both were told the money would be returned on July 4 2025 plus a dividend . Joe you have been straight with me and a gentlemen [sic] all along so that's why I'm asking what the cash needs are . I may be able to help . tell me what the offered return would be and how long the cash is needed . I've jumped through a lot of hoops to help . it's been a full time job so I want carbonatik to succeed as much as you do

> **Swaminathan (6/6/25, 7:17 AM):** Yes I totally understand that there was lot of misinformation on Brendan's etc. The reason why I said what I said was purely because I don't want to have any more misunderstandings. You and your team have been working on many things for us and I don't want to spoil the relationship in any way. And with all of the discussions we've had so far I can understand that you're vary [sic: wary] of taking undue risks and that's why I wanted to work more risk free solutions for this[.] Having said that, yes I do need funds asap. I have a lot of preparatory work to do not only in Zambia and Tanzania but also in Sri Lanka and Florida with the warehouse etc.

> [A financier] is funding 1 million for the trial though I haven't received it yet[.] I'll have it either today or on Monday latest[.] Apart from the 1 million minimum required for the trial shipment I also would need 1 to 2 million to take care of many other

requirements . Yes, 1 or 2 mil now will help a great deal but I had planned it out as and when I get the 80 million monetised after the trial shipment[.]

A true and correct copy of the June 6 text message is attached hereto as **Exhibit "J."** ***These messages constitute explicit admissions that (a) "a lot of things" previously told to Plaintiffs "aren't true"; (b) there has been "a lot of misinformation on Brendan's side etc."; and (c) contrary to Defendants' earlier claims of funded facilities, existing investor financing, and immediate delivery capability, Carbonatik still needed $1–2 million of new money merely to do preparatory work and fund a "trial shipment," and had not obtained the promised $250 million line of credit or monetized any "80 million." Moreover, despite Defendants' knowledge of Plaintiff's wire transfers and their assurances described above and below, Carbonatik never returned the $500,000.00 investment or delivered any copper, as promised.***

26. On June 24, 2025, Swaminathan text messaged a picture of copper ore to Smith to assuage Plaintiffs' concerns about the lack of delivery and apparent inability to deliver the ordered metals. Despite repeated promises on almost a daily basis over a period of several months, Carbonatik failed to deliver any copper shipments or to return the investment funds. ***Swaminathan's need to rely on an isolated photograph of ore—rather than actual shipments or site inspections—further underscores the inconsistency between Defendants' earlier boasts of ready production, substantial above-ground***

***inventory, and massive reserves, and their actual inability to produce or ship any copper or other metals.***

27.  On July 7, 2025, Heavy Metal's affiliate company—Heavy Metal Consulting, LLC—wire transferred $50,000.00 to Swaminathan personally for "Grade A Copper Cathode – 6 Metric Tons" per Invoice No. INV-000021.  No copper was ever delivered, and the $50,000.00 was never returned.

28.  Because of the delivery failures and multiple broken promises, Smith arranged with Carbonatik to personally visit Africa for the purpose of viewing the operations.  However, when arriving in Africa after some 30 hours of travel, no one from Carbonatik ever met with Smith or even responded to any of his communications.  Since returning to the United States, Smith has repeatedly requested information from Carbonatik.  On each such occasion, Carbonatik promised to provide it but then failed to do so, except to briefly show (*but not share*) a contract between itself and a private equity firm, whose identity was disclosed but whose identity is intentionally omitted from this Complaint. ***Defendants' refusal or inability to show Smith any actual operations or genuine agreements is irreconcilable with their prior representations that they owned the Mannar Basin, controlled tens of millions of tons of reserves, maintained thousands of tons of above-ground inventory, had secured investor financing and a forthcoming $250 million credit line, and were "ready to . . . deliver" in 2025.***

29.    Additionally, Heavy Metal has identified several potential misrepresentations and inconsistencies in promotional materials and information provided to Heavy Metal by Carbonatik, including the following:

a.  **Capacity/Stock and Mine Count.**  Carbonatik's February 17, 2025, overview packet states >20 mines (4 active), 2,000 tons ready-to-ship, and 25,000 MT/month capacity scalable to 100,000 MT/month.  A later "copy" packet states 5 active mines, 1,000 tons available, and only 4,000 MT/month capacity—materially lower. Plaintiffs later discovered that Carbonatik owned ***zero*** tons of any minerals and had no inventory whatsoever.   Contrary to Swaminathan's claims that Carbonatik owned or operated a smelting facility in Zambia, Carbonatik did not own any smelting operation, mine, stockpile, or mineral rights.   All minerals referenced in Defendants' investor materials and text messages were, in fact, owned by either foreign governments or third-party companies, none of whom had been paid by Carbonatik, and none of whom had released any product.

b.  **Concession/Rights Claims.**  Carbonatik circulated a 10-year Mannar Basin plan framed as an MOU/addendum under Sri Lankan law (Petroleum Resources Act), which on its face is not a concession instrument.   Yet, contemporaneous texts assert, "We own the rights for exploration and extraction" and the need for

$500M to begin, referencing a "43-101" for the basin—an inapt mining disclosure rubric in the mining context.

c. **Offtakes/Investor Funding.**  The message threads show shifting positions about specifications, ICPO drafts, and price points ($5,000/MT to $4,000–$4,500/MT), with no executed offtake or ICPO committed on the record.  Defendants also misrepresented their rights to graphite in Sri Lanka.  Carbonatik repeatedly told Plaintiffs that it owned the graphite "free and clear" and had thousands of tons available for immediate shipment.  Plaintiffs later learned that Carbonatik had not paid the Sri Lankan government for any graphite, and the government refused to release even a single ton until full payment was received.  In fact, Carbonatik had no ownership interest, no valid concession, and no lawful authority to sell or ship any Sri Lankan graphite.

d. **Extraordinary Guaranteed Returns.**  The Share Purchase Agreement grants two micro-holders (0.5% each) ~US$1.2M/year for 20 years starting in July 2025, despite the absence of binding sales. Taken together, each Membership Certificate reflects those grants.

30.  Carbonatik's communications reflect repeated pressure for additional wire transfers, often in $50,000.00 increments, contrary to its own published Rules of Engagement requiring formal POF/LC-based transactions. The exchanges also include refund instructions that were never honored.  Again, relying on Defendants' representations (including fabricated documentation and

false assurances of imminent delivery), Heavy Metal expended substantial resources and arranged investment commitments for over 55,000 metric tons of copper. Heavy Metal later discovered that Defendants had made similar fraudulent solicitations to other entities and individuals, using the same misrepresentations and materials. After Smith traveled to Africa and was completely ignored by Carbonatik personnel, Defendants then claimed that a "new investor" had emerged who would repay Heavy Metal and all other victims "within a week." Two months passed, but there was no repayment, no communication from this purported investor, and no evidence that such an investor existed. Even if such an investor were real, Heavy Metal reasonably feared that any repayment would be funded through a furtherance of a Ponzi-style scheme using new investor money to satisfy prior undisclosed liabilities.

31. Defendants were simultaneously engaged in another independent scheme involving Premiere Properties, Inc., as evidenced by filings in *Premiere Properties, Inc. v. Carbonatik, LLC, Carbonatik Graminet, LLC, Brendan Fitzpatrick, and Joseph Swaminathan,* Case No. 2024-CA-005651, pending in the Twelfth Judicial Circuit in and for Sarasota County, Florida. In that action, Defendants incurred more than $4.4 million in debt under multiple promissory notes issued in 2023 and 2024.

32. On May 2, 2025, Defendants executed a written Settlement Agreement with Premiere Properties, agreeing to liability for $4,425,500.00 and to the entry of a Stipulated Final Judgment in that amount upon any breach. Defendants were required to make an initial $250,000.00 payment by May 16,

2025.  Defendants immediately defaulted, even after an extension to May 26, 2025.

33.    On June 23, 2025, Premier Properties filed a Verified Complaint to Enforce Settlement Agreement and for Entry of Final Judgment, which included a copy of the Settlement Agreement.  A true and correct copy of Premier Properties, Inc.'s Verified Complaint to Enforce Settlement Agreement and for Entry of Final Judgment is attached hereto as **Exhibit "K."**

34.    In the same case, Premiere Properties obtained a turnover order compelling Defendants to surrender a purported multi-million-dollar gemstone (a "blue sapphire") pledged as collateral after Defendants failed to honor the terms of the Stipulated Final Judgment.  Defendants' conduct in the Sarasota case illustrates the same pattern of false promises, fabricated collateral, solicitation of funds under false pretenses, and immediate default/breach of contract.  Defendants repeatedly represented that they had substantial wealth, assets, minerals, operational capacity, and financing, when they were in fact insolvent, defaulting on multimillion-dollar debts and unable to perform their contractual obligations.  This pattern corroborates Plaintiffs' allegations that Defendants engaged in a systematic scheme to obtain money from multiple victims through fraudulent misrepresentations, omissions, and deception.  Moreover, such conduct is characteristic of a Ponzi-scheme, whereby new investor funds are misappropriated for the purpose of paying prior undisclosed debts.

35.     Defendants concealed from Plaintiffs that they were insolvent, in default on multiple promissory notes, and had entered a $4.425 million settlement that required an immediate six-figure payment.  Instead, Defendants represented that Plaintiffs' $500,000.00 investment would be used for copper procurement, logistics, and operational activities, when Defendants appear to have been attempting to divert new investor funds to satisfy its prior investor obligations—a hallmark of a Ponzi-style operation.

36.     Plaintiffs have retained The Carlin Law Firm, PLLC to represent it in these proceedings and has agreed to pay a reasonable fee for the representation.

## COUNT 1 – SECURITIES FRAUD / VIOLATION OF SECTION 10(b) AND RULE 10b-5
### (All Plaintiffs Against All Defendants)

37.     Plaintiffs adopt, re-allege, and incorporate by reference paragraphs 1 through 36.

38.     Defendants, directly and indirectly, used interstate commerce to employ a scheme to defraud Plaintiffs in connection with the purchase or sale of securities in violation of 15 U.S.C. § 78j(b) and C.F.R. § 240.10b-5.

39.     Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
> (b) To use or employ, in connection with the purchase or sale of any security… any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe…

40.     Further, SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, provides:

> It shall be unlawful for any person, directly or indirectly...
> (a) to employ any device, scheme, or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

41.    Defendants made material misrepresentations and omissions regarding mine ownership, funding, and returns.

42.    Defendants acted with scienter, knowing that their statements were false, or in reckless disregard of the falsity of the statements.

43.    Defendants' intent to deceive, manipulate, or defraud is further demonstrated by their continuous assurances of imminent shipments, fabricated investor materials, and shifting explanations regarding capacity and financing.

44.    Defendants' fraudulent statements were made in connection with Plaintiffs' purchase of securities, including the February 2025 Share Purchase Agreement and the corresponding $500,000.00 paid for a 1% equity interest in Carbonatik Graminet.

45.    Defendants explicitly used these statements to induce Plaintiffs to purchase equity interests and to fund Carbonatik's operations.

46.    Plaintiffs reasonably relied on Defendants' misrepresentations about ownership of minerals, reserves, financing, production capability, inventory,

concessions, guaranteed dividends, and delivery capability. Plaintiffs would not have purchased the securities or wired funds had they known the truth.

47.     Because of Defendants' securities fraud, Plaintiffs have suffered substantial economic damages, including lost profits.

48.     Plaintiffs' losses were proximately caused by Defendants' securities fraud.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Carbonatik, LLC, Carbonatik Graminet, LLC, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, jointly and severally, for compensatory damages, consequential (special) damages, prejudgment interest, attorneys' fees, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

**COUNT 2 – VIOLATION OF SECTION 12(a)(2) OF SECURITIES ACT OF 1933**
**(All Plaintiffs Against All Defendants)**

49.     Plaintiffs adopt, re-allege, and incorporate by reference paragraphs 1 through 36.

50.     Section 12(a)(2) of the Securities Act of 1933 provides as follows:

Any person who--

(1) offers or sells a security in violation of section 77e of this title, or

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral

communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

51.     Defendants solicited Plaintiffs' investment using false statements via interstate communications.

52.     Defendants were sellers or solicitors under 15 U.S.C. § 77l(a)(2) because they either: (1) passed title or other interest in the security for value through the Share Purchase Agreement for 1% interest in Carbonatik Graminet; or (2) successfully solicited Plaintiffs' purchase of the securities and the accompanying $500,000.00 investment, motivated by their own financial interests.

53.     The sale was effectuated by means of oral communications within the meaning of section 12(a)(2).  Defendants made extensive interstate oral communications—including phone calls, online meetings, and text messages—soliciting the investment, describing the securities, and inducing Plaintiffs to enter the Share Purchase Agreement and to wire funds.

54.    Defendants' oral communications included untrue statements of material fact and omitted facts necessary to make their statements not misleading.

55.    Plaintiffs did not know, and could not reasonably have known, of the falsity at the time of investment.

56.    Plaintiffs suffered substantial economic losses caused by Defendants' untrue statements, including lost profits.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Carbonatik, LLC, Carbonatik Graminet, LLC, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, jointly and severally, for compensatory damages, consequential (special) damages, prejudgment interest, attorneys' fees, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

## COUNT 3 – VIOLATIONS OF THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT ("FSIPA"), §§ 517.301, *ET SEQ.*, FLA. STAT.
### (All Plaintiffs Against All Defendants)

57.    Plaintiffs adopt, re-allege, and incorporate by reference paragraphs 1 through 36.

58.    Section 517.301, *Florida Statutes*, provides as follows:

In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security… it is unlawful and a violation of this chapter for a person, directly or indirectly:

1. To employ any device, scheme, or artifice to defraud;
2. To obtain money or property by means of any untrue statement

of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

*See* § 517.301, Fla. Stat. (2025).

59. Defendants offered and sold securities to Plaintiffs in Florida, including a 1% ownership interest in Carbonatik Graminet, in exchange for Plaintiffs' $500,000.00 investment.

60. These transactions occurred within the State of Florida, and Plaintiffs are within the class of investors that FSIPA is designed to protect.

61. In connection with the offer and sale of these securities, Defendants directly and indirectly made untrue statements of material fact and omitted material facts, including, but not limited to, false representations that: (1) Carbonatik owned or controlled the Mannar Basin, 30 million tons of graphite, and 20 million tons of copper ore; (2) Carbonatik possessed thousands of tons of above-ground inventory and ready-to-ship copper and graphite; (3) Carbonatik had operational mines, smelting facilities, and active concessions; (4) sovereign-wealth and Middle-Eastern banks were "lined up" to lend at 3% APR and would issue a $250 million credit line upon issuance of an NI 43-101; (5) Carbonatik had funded investor facilities and production capacity; (6) Plaintiffs' investment would yield a guaranteed 120% dividend for 20 years; and (7) Carbonatik could make immediate copper deliveries.

62.   Defendants concealed that: (1) Carbonatik owned no minerals; (2) no concessions existed; (3) no lender financing existed; (4) Carbonatik lacked even minimal working capital; and (5) and no shipments were possible.

63.   Because of Defendants' securities fraud, Plaintiffs have suffered substantial economic damages, including lost profits.

64.   Plaintiffs' losses were proximately caused by Defendants' securities fraud.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Carbonatik, LLC, Carbonatik Graminet, LLC, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, jointly and severally, for compensatory damages, consequential (special) damages, prejudgment interest, attorneys' fees, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

### COUNT 4 – FLORIDA CIVIL REMEDIES FOR CRIMINAL VIOLATIONS UNDER FLA. STAT. § 772.101, *ET SEQ.* (All Plaintiffs Against All Defendants)

65.   Plaintiffs adopt, re-allege, and incorporate by reference paragraphs 1 through 36.

66.   At all material times, Defendants received proceeds derived from a pattern of criminal activity, having engaged in a systematic and repeated course of conduct intended to defraud Plaintiffs by false or fraudulent means in violation of section 817.034(4)(a), *Florida Statutes,* including, but not limited to: (1) soliciting Plaintiffs' $500,000.00 investment through knowingly false

representations of mineral ownership, inventory, production capacity, financing, and operational readiness; (2) soliciting an additional $50,000.00 for an undeliverable copper shipment; and (3) engaging in similar fraudulent conduct toward other victims, including the $4.4 million Premiere Properties scheme resulting in a Stipulated Final Judgment.

67.    Defendants have acted in association with an enterprise—consisting of Carbonatik, LLC, Carbonatik Graminet, LLC, Fitzpatrick, and Swaminathan—and directly participated in the formation and conduct of that enterprise through a pattern of criminal activity, including violations of sections 817.034(4)(a), 517.301, and 812.014, *Florida Statutes*, and other predicate acts set forth in chapter 772.

68.    The criminal activity was not isolated but was a pattern of regular conduct.

69.    Defendants misappropriated or permanently deprived Plaintiffs of their property through fraudulent means in violation of sections 772.103 and 817.034(4)(a), *Florida Statutes*.  Defendants knew they owned no minerals, had no concessions or inventory, had no financing, and could not perform their contractual obligations, yet induced Plaintiffs to transfer funds for their own benefit.

70.    Defendants knowingly conducted or attempted to conduct transactions with the misappropriated funds belonging to Plaintiffs—including transferring funds to third parties, using Plaintiffs' money for personal purposes, and concealing the receipt and disposition of funds knowing that the

transactions involved the proceeds of unlawful activity, all with the intent to promote the ongoing unlawful activity, in violation of sections 772.103 and 817.034(4)(a).

71.   Defendants engaged in a scheme to defraud Plaintiffs through a systematic and ongoing course of conduct with the intent to obtain their property thereby, in violation of sections 772.103 and 817.034(4)(a).

72.   Defendants' unlawful actions occurred over a period of many months, across multiple jurisdictions, and involved numerous communications, solicitations, victims, and fabricated reassurances.  Moreover, the conduct was not isolated, so there exists an ongoing threat of continued criminal activity, including continuing solicitations of investors, as evidenced by Defendants' contemporaneous fraud against Premiere Properties and others.

73.   As a direct and proximate result of Defendants' criminal activity, Plaintiffs have been damaged.

74.   Pursuant to section 772.104(1), Plaintiffs are entitled to recover their reasonable attorneys' fees from Defendants if they are the prevailing party in this action.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Carbonatik, LLC, Carbonatik Graminet, LLC, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, jointly and severally, for compensatory damages, treble damages, prejudgment interest, attorneys' fees,

court costs, and such other and further relief in law or equity as this Court may deem just and proper.

## COUNT 5 – COMMON LAW FRAUD
### (All Plaintiffs Against All Defendants)

75.     Plaintiffs adopt, re-allege, and incorporate by reference paragraphs 1 through 36.

76.     Defendants knowingly made false statements about Carbonatik's finances, operations, and ability to deliver copper.

77.     Defendants, including Fitzpatrick and Swaminathan, made multiple false representations of material fact to Plaintiffs in specific oral conversations and written messages between January and April 2025, including, but not limited to:

a. Carbonatik owned and controlled the Mannar Basin;

b. Carbonatik owned thousands of tons of copper and graphite ready for immediate shipment;

c. Carbonatik had secured sovereign-wealth-fund financing and bank credit lines to support the operations;

d. Carbonatik had operating mines, funded facilities, and active concessions;

e. Plaintiffs' investment would yield a guaranteed 120% annual dividend beginning July 2025;

f. Carbonatik had paid the Sri Lankan government for rights to above-ground graphite stockpiles; and

g. Carbonatik had the ability and intention to deliver copper within weeks of receiving Plaintiffs' payment.

78. When making the above statements, Defendants knew that the statements were false.

79. Defendants intended Plaintiffs to rely on those statements.

80. Plaintiffs justifiably relied on the statements and, because of such reliance, suffered damages, including lost profits.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Carbonatik, LLC, Carbonatik Graminet, LLC, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, jointly and severally, for compensatory damages, consequential (special) damages, punitive damages, prejudgment interest, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

**COUNT 6 – BREACH OF CONTRACT (BROKER AGREEMENT)**
**(Plaintiff Heavy Metal Capital Partners, LLC Against Carbonatik, LLC)**

81. Plaintiff, Heavy Metal Capital Partners, LLC, adopts, re-alleges, and incorporates by reference paragraphs 8 through 36.

82. Plaintiff and Carbonatik, LLC entered into a valid Broker Agreement.

83. Plaintiff performed or stood ready to perform.

84. Carbonatik, LLC breached the Broker Agreement by: (1) failing to deliver any copper or other commodities for transactions Heavy Metal procured; (2) failing to pay Heavy Metal contractual commissions; (3) refusing to honor its

own Rules of Engagement, including by demanding *ad hoc* additional funding, rather than processing transactions through standard ICPO/POF-based pathways; (4) circumventing Heavy Metal with third parties and concealing communications with Heavy Metal's originated buyers; (5) ignoring requests for shipping schedules, performance documentation, audit data, and customary transaction paperwork; and (6) failing to return funds or issue refunds when transactions collapsed due to Carbonatik's inability to perform.

85.     As a result of the stated breaches, Plaintiff has been damaged.  In addition to compensatory damages, Plaintiffs should be awarded consequential (special) damages, including lost profits and terminated business relationships with those whom Plaintiff contacted pursuant to the Broker Agreement.

86.     Under paragraph 9 of the Broker Agreement, Plaintiff is entitled to recover its reasonable attorneys' fees and costs from Defendant if Plaintiff is the prevailing party in this action.

WHEREFORE, Plaintiff, Heavy Metal Capital Partners, LLC, demands judgment against Defendant, Carbonatik, LLC, for compensatory damages, , consequential (special) damages, prejudgment interest, attorneys' fees, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

### COUNT 7 – BREACH OF CONTRACT (SHARE PURCHASE AGREEMENT)
### (Plaintiffs Smith and Segerson Against Carbonatik Graminet, LLC)

87.     Plaintiffs, David C. Smith and Richard H. Segerson, adopt, re-allege, and incorporate by reference paragraphs 3 through 4 and 15 through 36.

88.    Plaintiffs and Carbonatik Graminet entered into a valid Share Purchase Agreement.

89.    Plaintiffs performed or stood ready to perform.

90.    Carbonatik Graminet breached by failing to deliver shipments, pay commissions, or refund funds.

91.    As a result of the breach, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs, David C. Smith and Richard H. Segerson, demand judgment against Defendant, Carbonatik Graminet, LLC, for compensatory damages, prejudgment interest, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

## COUNT 8 – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUPTA"), FLA. STAT §§ 501.201 *ET SEQ.*) (All Plaintiffs Against All Defendants)

92.    Plaintiffs adopt, re-allege, and incorporate by reference paragraphs 1 through 36.

93.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce. *See* § 501.204, Fla. Stat. (2025).

94.    Defendants were each engaged in "trade or commerce" under section 501.204, *Florida Statutes,* because they marketed, promoted, solicited investment for, and purported to sell commodities, mining outputs, and investment opportunities to Plaintiffs in Florida and abroad.   Their conduct

squarely falls within FDUTPA's broad statutory reach, which is liberally construed.

95.     Defendants committed multiple "deceptive" and "unfair" acts within the meaning of FDUTPA, including, but not limited to, misrepresenting: (1) ownership of the Mannar Basin, copper reserves, graphite reserves, and tens of millions of tons of mineral ore when Carbonatik owned no such assets; (2) inventory claiming to have thousands of tons of above-ground copper and graphite and active production capacity, when Carbonatik owned zero minerals; (3) financing, repeatedly claiming that it had sovereign wealth funds, Middle Eastern bank contacts, and a Sharjah Bank LOC that was "lined up" to lend at 3% APR—none of which existed; (4) operations, including claims of smelting facilities, active mines, funded concessions, and "operational readiness" across Africa and Sri Lanka; (5) deliverability, promising immediate copper shipments and guaranteed on-time deliveries despite having no ability to mine, procure, or ship product; (6) furnishing fabricated documents, including a fake LOI, inconsistent mine-capacity packets, and materials falsely representing ownership and production capability; and concealing material facts, including that none of the minerals were paid for, none of the concessions were valid, no NI 43-101 report would issue, and Carbonatik lacked basic operating capital.

96.     The individual Defendants, Swaminathan and Fitzpatrick, actively participated in or had some measure of control over the deceptive and improper dealings.

97. Because of Defendants' unfair and deceptive practices, Plaintiffs have been damaged.

98. Defendants are the proximate cause of Plaintiffs' actual damages.

99. Under section 501.2105, *Florida Statutes*, Plaintiffs are entitled to recover their reasonable attorneys' fees and costs from Defendants if Plaintiffs are the prevailing party in this action.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Carbonatik, LLC, Carbonatik Graminet, LLC, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, jointly and severally, for compensatory damages (measured as actual damages under FDUTPA), prejudgment interest, attorneys' fees, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

## COUNT 9 – AIDING AND ABETTING FRAUD
### (All Plaintiffs Against Swaminathan and Fitzpatrick)

100. Plaintiffs adopt, re-allege, and incorporate by reference paragraphs 1 through 36; 38-48; 50-56; 58-64; and 76 through 80.

101. A primary fraud was committed by Carbonatik, which—through coordinated written and oral communications—made numerous false statements regarding: (1) ownership of the Mannar Basin, copper reserves, graphite reserves, and other mineral concessions; (2) the existence of thousands of tons of above-ground inventory ready for shipment; (3) sovereign-wealth and bank financing, including a promised $250 million Sharjah Bank credit line; (4)

guaranteed 120% annual dividends; and (5) the ability to deliver copper within weeks.

102.  These misrepresentations were knowingly false, material, and intended to induce Plaintiffs to invest $500,000.00, an affiliate entity to pay an additional $50,000.00, and deploy substantial business resources.

103.  Defendants Swaminathan and Fitzpatrick had knowledge and substantially assisted the fraud by: (1) jointly soliciting Plaintiffs' investment; (2) drafting and circulating false investor packets and capacity sheets; (3) demanding additional wire transfers contrary to their own rules of engagement; and (4) "ghosting" Smith during his Africa trip; and (5) fabricating new stories about a new investor when confronted about the failed promises.

104.  As a direct and proximate result of Swaminathan's and Fitzpatrick's knowing and substantial assistance in the fraudulent scheme, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, jointly and severally, for compensatory damages, punitive damages, prejudgment interest, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

**COUNT 10 – CIVIL CONSPIRACY TO DEFRAUD**
**(All Plaintiffs Against All Defendants)**

105.   Plaintiffs adopt, re-allege, and incorporate by reference paragraphs 1 through 36.

106.   Defendants agreed to a common plan to defraud Plaintiffs.

107.   This agreement is evidenced by coordinated text messages, mirrored representations, shared documents, synchronized solicitations, and the intentional concealment of the truth.

108.    In furtherance of the conspiracy, Defendants: (1) repeated the same false claims about concessions, mines, and inventory; (2) issued multiple rounds of false reassurances and promises of shipments; (3) demanded funds inconsistent with their own engagement rules; (4) concealed Carbonatik's inability to supply any minerals; (5) fabricated financing stories to keep Plaintiffs engaged; and (6) used Plaintiffs' funds without delivering any promised products or returns.

109.   The conspiracy resulted in, and was intertwined with, the fraudulent conduct alleged in the "General Facts" section and in Count 3—fraud that Defendants jointly conceived, executed, and concealed.

110.   Plaintiffs were directly and proximately harmed by the conspiracy, including loss of invested funds, additional payments, reliance expenditures, reputational harm, and other consequential damages.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Carbonatik, LLC, Carbonatik Graminet, LLC, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, for compensatory damages,

consequential (special) damages, punitive damages, prejudgment interest, attorneys' fees, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

## COUNT 11 – CONSTRUCTIVE FRAUD / BREACH OF FIDUCIARY DUTY
### (All Plaintiffs Against Defendant Swaminathan)

111. Plaintiff adopts, re-alleges, and incorporates by reference paragraphs 1 through 36.

112. Swaminathan owed fiduciary duties arising from: (1) the investment relationship; (2) his role as co-manager of Carbonatik Graminet; (3) his assurances of oversight, safeguarding of funds, and operational stewardship; and (4) Plaintiffs' reasonable trust and confidence in him as the individual responsible for Carbonatik's financial, operational, and investor functions.

113. He breached those duties by: (1) misappropriating funds; (2) concealing Carbonatik's true financial status; (3) misrepresenting financing and production capability; (4) concealing material information and providing fabricated or misleading documentation; (5) demanding additional funds while knowing shipments were impossible; and (6) failing to safeguard Plaintiffs' investment or act in their best interests.

114. By virtue of the fiduciary relationship, Swaminathan's misrepresentations and concealments constituted constructive fraud, because they violated the trust and confidence Plaintiffs placed in him and were used to induce financial contributions he knew Carbonatik could not honor.

115.  As a direct and proximate result, Plaintiffs suffered damages, including loss of invested funds, additional payments, operational costs, and consequential damages.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendant, Joseph K. Swaminathan a/k/a Joseph Swaminath, for compensatory damages, punitive damages, prejudgment interest, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

## COUNT 12 – UNJUST ENRICHMENT
### (Plaintiff Heavy Metal Capital Partners, LLC Against All Defendants)

116.  Plaintiff adopts, re-alleges, and incorporates by reference paragraphs 1 through 36.

117.  Plaintiff conferred substantial and direct benefits upon Defendants, including, but not limited to: (1) the $500,000.00 investment solicited on the basis of Defendants' representations about Carbonatik's operations, financing, concessions, and mineral ownership; (2) the deployment of more than 30 personnel, business development resources, and operational support to advance Carbonatik's purported mineral-sales programs; (3) the procurement of multi-year buyer commitments, introductions, and commercial opportunities that Carbonatik could not have obtained on its own; and (4) reputational and logistical support that Defendants used to bolster their credibility with investors and third parties.

118. Defendants knowingly retained those benefits, including the funds, commercial opportunities, and credibility enhancements that Plaintiffs provided.

119. It would be inequitable for Defendants to retain these benefits.

WHEREFORE, Plaintiffs, Heavy Metal Capital Partners, LLC, David C. Smith, and Richard H. Segerson, demand judgment against Defendants, Carbonatik, LLC, Carbonatik Graminet, LLC, Joseph K. Swaminathan a/k/a Joseph Swaminath, and Brendan Fitzpatrick, jointly and severally, for restitution, prejudgment interest, court costs, and such other and further relief in law or equity as this Court may deem just and proper.

**JURY TRIAL DEMAND**

120. Plaintiff demands a trial by jury on all issues so triable.

DATED: November 20, 2025.

THE CARLIN LAW FIRM, PLLC
*Attorneys for Plaintiffs*
One Financial Plaza
100 S.E. 3rd Avenue, Suite 1103
Fort Lauderdale, Florida 33394
Tel.: (954) 440-0901
Primary e-mail: eservice@carlinfirm.com

By:   */s/ Justin C. Carlin*
        JUSTIN C. CARLIN, ESQ.
        Fla. Bar No.: 068429
        Sec. e-mail: jcarlin@carlinfirm.com
        Ter. e-mail: mpanico@carlinfirm.com